IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **ELIZABETH WATTS, as Personal Representative of the Estate of Curtis Carl Watts,** | )<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | ) Case No.: 1:11-CV-3715-VEH<br>) |
| **CLAY COUNTY, ALABAMA,** | )<br>) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

**I.    Introduction**

Plaintiff initiated this wrongful death action against Defendant Clay County, Alabama (the "County") on September 21, 2011, in the Circuit Court of Clay County, Alabama. (Doc. 1-1). On October 24, 2011, the County removed Plaintiff's lawsuit to this court on the basis of federal question jurisdiction. (Doc. 1 ¶ 3).

Pending before the court is Defendants' Motion To Dismiss Plaintiff's Amended Complaint (Doc. 25) (the "Motion") filed on February 7, 2012.[1]

---

[1] Defendants' Motion also contains a request "to be heard orally . . . ." (Doc. 25 ¶ 4). Because the court finds the issues raised in the Motion to be straightforward, a hearing is unnecessary and the request to present oral argument is due to be denied.

Defendants also filed their supporting brief on February 7, 2012. (Doc. 26). Plaintiff has filed no opposition to the Motion. For the reasons explained below, the Motion is due to be granted, and Plaintiff's case is due to be dismissed.

## II.     Applicable Standards

### A.     Motion To Dismiss

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 545 (quoting *Conley*, 355 U.S. at 47). However at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

"[A] court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.   **Plaintiff's Failure to Oppose**

Plaintiff's failure to file any opposition to Defendants' Motion is not without significant repercussions. As explained by Judge Steele in *Williams v. Quality Filters, Inc.*, No. 07-0015-WS-B, 2007 WL 4219201, *1 (S.D. Ala. Nov. 27, 2007):

> Courts are not obligated to read a party's mind or to construct arguments that it has failed to raise and that are not reasonably presented in the court file. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587,

3

> 599 (11th Cir. 1995) ( "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . ."); *see also Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) (declaring that a "party who aspires to oppose a . . . motion must spell out his arguments squarely and distinctly, or else forever hold his peace," as district court may ignore arguments not adequately developed by nonmovant). Clearly, "the onus is upon the parties to formulate arguments." *Resolution Trust*, 43 F.3d at 599; *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) ("It is not for the court to manufacture arguments on Plaintiff's behalf."). Accordingly, plaintiff's decision not to respond to the Motion is at her peril.

*Williams*, 2007 WL 4219201, *1.

### C. Qualified Immunity

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (quotation marks omitted). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Id.* at 1357-58.

This is a two-part test. Under the first step, "the defendant must [prove that he or she was] performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." *Holloman ex rel. Holloman*

*v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Next, the defendant must prove that he or she was "executing that job-related function." *Id.* at 1267. "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358.[2]

Until 2009, the Supreme Court had required a two-part inquiry to determine the applicability of qualified immunity, as established by *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the *Saucier* test, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier*, 533 U.S. at 201). The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope*, 536 U.S. at 739. This second inquiry ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206.

---

[2] Here, there is no dispute about whether these individuals were acting within the scope of their discretionary authority.

The "unlawfulness must be apparent" under preexisting law.[3] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted). Therefore, a temporal requirement exists related to this inquiry. More particularly, a plaintiff must show that a reasonable public officer would not have believed her actions to be lawful in light of law that was clearly established at the time of the purported violation. *See Anderson*, 483 U.S. at 639 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' <u>at the time</u> it was taken[.]") (emphasis added) (citation omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("If the law <u>at that time</u> did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.") (emphasis added); *Brosseau*, 543 U.S. at 198 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law <u>at the time</u> of the conduct.") (emphasis added); *see also Johnson v. Clifton*, 74 F.3d 1087, 1093 (11th Cir. 1996) ("We know of no

---

[3] Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this litigation. *See Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) ("In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996))).

[preexisting] case which might have clearly told Clifton that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful.").

However, the *Saucier* framework was made non-mandatory by the Supreme Court in *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), in which the Court concluded that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." Thus, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's modification of *Saucier*'s analytical process, the substantive analysis remains unchanged; an officer is entitled to qualified immunity protection as long as he reasonably "could have believed" his conduct was lawful. *Hunter v. Bryan*, 502 U.S. 224, 227 (1991). Therefore, to deny immunity, a plaintiff must affirmatively demonstrate that "no reasonable competent officer would have" acted as the public official did. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In determining whether the plaintiff meets this burden in the context of a motion to dismiss, the court is guided by the Eleventh Circuit's holding in *Randall*

*v. Scott*, 610 F.3d 701 (11th Cir. 2010), which clarifies that <u>the heightened pleading rule no longer applies to civil rights cases in which a qualified immunity defense is asserted</u>:

> While *Swann*, *GJR*, and *Danley* reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, <u>we agree with Randall that those cases were effectively overturned by the *Iqbal* court</u>. <u>Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*</u>. A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief. . . .
>
> <u>After *Iqbal* it is clear that there is no "heightened pleading standard" as it relates to cases governed by Rule 8(a)(2), including civil rights complaints</u>. All that remains is the Rule 9 heightened pleading standard.

*Randall*, 610 F.3d at 709-10 (emphasis added) (footnote omitted).

### III.   Analysis

####   A.   Statute of Limitations

Plaintiff's amended complaint contains four counts and adds four individual

8

defendants[4] and two entity defendants.[5] Defendants' primary argument in support of their Motion is that all claims included in Plaintiff's amended complaint are barred by the applicable statute of limitations. (Doc. 26 at 9).

The death of the decedent in this case, Curtis Carl Watts, occurred on September 25, 2009. Plaintiff filed her Motion for Leave To Amend Complaint (Doc. 9) on December 6, 2011.

As Defendants explain in their brief:

> Forty-two U.S.C. § 1983 is a vehicle to bring in federal court alleged constitutional violations that occur as a result of some alleged state court violations. There is no specified statute of limitations for § 1983 claims. Rather, federal courts must look at the underlying state statute of limitations. *Powell v. Thomas*, 641 F.3d 1300, 1303 (11th Cir. 2011). In this case, the alleged conduct arises under the Alabama Wrongful Death Statute which provides that a personal representative can commence to recover damages for the wrongful act, omission, or negligence from any prison that caused the death of the decedent. Ala. Code § 6-5-410 (1975). The action must be brought within two years from the death of the decedent. Ala. Code § 6-2-38 (1975).
>
> As made clear in this brief, the statute of limitations ran on September 25, 2011, . . . .

(Doc. 26 at 10).

---

[4] The new "Individual Defendants" are Jamie Smith, Jean Dot Alexander, Steve Cotney, and Tony Tomlin.

[5] The new "Entity Defendants" are the Clay County Sheriff's Department and the Clay County Sheriff Special Response Team.

Plaintiff has not suggested that the relation back doctrine somehow saves the claims set forth in her amended complaint nor has she otherwise challenged the merits of Defendants' well-articulated statute of limitations defense. Moreover, it is not the court's function to construct opposing contentions for her. *See, e.g., Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) ("It is not for the court to manufacture arguments on Plaintiff's behalf."). Therefore, the statute of limitations portion of the Motion is due to be granted.

### B.  Individual Defendants

#### 1.  Federal Claims

Plaintiff has only sued the Individual Defendants in their individual capacity and they all have asserted that qualified immunity protects them from further prosecution of any federal constitutional claims in this case. In granting Plaintiff the opportunity to file an amended complaint, the court made it very clear that shotgun pleading was to be avoided. (Doc. 16 at 7-8).

In studying Plaintiff's amended pleading, the court observes that shotgun allegations still abound. Further, because of the shotgun and conclusory nature of the allegations set forth in the amended complaint, Plaintiff has failed to meet the *Iqbal* plausibility standard.

In particular, Plaintiff's amended complaint is silent about what Defendants

Cotney and Tomlin allegedly did which could arguably subject them to personal liability for their actions as violations of the constitution. As for Defendants Alexander and Smith, to the extent that Plaintiff contends that they should be held personally liable under a supervisory constitutional theory, her allegations to sustain such a claim are woefully inadequate.

> The *Cottone* supervisory standard provides:

> "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted); *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at *5; *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at *5 (quoting *Braddy v. Fla. Dept. of Labor & Employment*, 133 F.3d 797, 802 (11th Cir. 1998)); *Brown*, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's " 'custom or policy ... result[s] in deliberate indifference to constitutional rights' " or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at *5 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991)); *Hartley*, 193 F.3d at 1263; *see also Post v. City of Ft. Lauderdale*, 7

> F.3d 1552, 1560–61 (11th Cir.1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

362 F.3d at 1360-61.

Here, Plaintiff has not alleged personal participation in any alleged excessive force. She also does not assert the existence of widespread unconstitutional conduct. Similarly, Plaintiff has not articulated any facts that would support "the inference that the supervisor directed the subordinate to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

Finally, to the extent that Plaintiff relies upon an alleged lack of training as a way to maintain her supervisory liability theory, she ineffectively only factually supports this by the allegation of the decedent's death. Such a bare allegation, without more, is inadequate because, when "[t]he policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the [defendant], and the causal connection between the 'policy' and the constitutional deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985) (footnote omitted).

Accordingly, the Motion is due to be alternatively granted with respect to the

Individual Defendants on qualified immunity grounds as to any federal constitutional claims asserted against them.

### 2. State Law Claims

The Individual Defendants also contend that to the extent Plaintiff seeks to assert state law claims against them, sovereign immunity bars them. As Defendants state in their brief:

> "The law is clear in Alabama that sheriffs are constitutionally established executive officers of the State of Alabama." *Ex parte Sumter County*, 953 So. 2d 1235, 1239 (Ala. 2006). Under Article I, § 14, of the Alabama Constitution, sheriffs and deputy sheriffs have absolute immunity from lawsuits when "acting within the line and scope of their employment." *Ex parte Sumter County*, 953 So. 2d at 1239 (internal citations omitted).
>
> All courts reviewing this issue have unanimously ruled that absolute immunity bars state-based tort claims against Alabama county sheriffs. *See e.g. Lancaster v. Monroe County*, 116 F.3d 1419, 1431 (11th Cir. 1998) (holding that a sheriff was entitled to sovereign immunity); *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) (holding a sheriff and deputy sheriff were entitled to state sovereign immunity); *Carr v. City of Florence*, 916 F.2d 1521, 1525-26 (11th Cir. 1990); *Ex parte Blankenship*, 893 So. 2d 303, 305 (Ala. 2004) (granting immunity to a deputy sheriff alleged to have been acting in the course and scope of his duties); *King v. Colbert County*, 620 So. 2d 623, 626 (Ala. 1993); *Ex parte McWhorter*, 880 So. 2d 1116, 1117 (Ala. 2003) (holding deputy sheriff entitled to sovereign immunity); *Hereford v. Jefferson County*, 586 So. 2d 209, 210 (Ala. 1991); *Ex parte Haralson*, 871 So. 2d 802, 807 (Ala. 2003) (holding deputy sheriff entitled to sovereign immunity); *Ex parte Purvis*, 689 So. 2d 794, 795-96 (Ala. 1996) (holding sheriff and deputy were entitled to sovereign immunity in both their individual and official capacities); *Parker v. Amerson*, 519 So. 2d

442, 445 (Ala. 1987) (holding a sheriff immune from suit although sued "individually, and as Sheriff").

(Doc. 26 at 19-20).

Therefore, based upon the foregoing authorities, all state law claims asserted against the Individual Defendants are alternatively due to be dismissed without prejudice on the grounds of sovereign immunity.[6]

## C. Entity Defendants

As an alternative ground in support of the Motion, the Entity Defendants maintain that they are due to be dismissed because they are not entities that are legally subject to suit. Concerning the Clay County Sheriff's Department, the Entity Defendants offer controlling authority in support of this proposition with respect to § 1983 actions. *See Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("We agree with the magistrate judge's conclusion, which was adopted by the district court, that the Jefferson County Sheriff's Department is not a legal entity and, therefore, is not subject to suit or liability under section 1983.").

The *Dean* court utilizes a two-factor framework for determining whether an entity is properly sued: First, does the defendant fall within a category of those "not

---

[6] *See Thomas v. U.S. Postal Service,* 364 Fed. App'x 600, 601 (11th Cir. 2010) ("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists." (citing *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996))

usually considered legal entities subject to suit"? *Dean*, 951 F.2d at 1214. Second, how does state law treat that entity regarding its capacity to be sued? *Id.* at 1215. As analyzed in *Dean*, the answers to both of these questions confirms that the Clay County Sheriff's Department is not an entity capable of being sued.

Additionally, using these factors, the court agrees with the Entity Defendants that the Clay County Sheriff Special Response Team, as a unit of the Clay County Sheriff's Department, is similarly not amendable to suit under § 1983 or Alabama law. (Doc. 26 at 21-22). Certainly, Plaintiff has not pointed to any Alabama statute or case that indicates otherwise. (*Id.* at 22).

Therefore, based upon the foregoing analysis, all claims asserted against the Entity Defendants are due to be dismissed on the alternative grounds that they are legally subject to suit under either Alabama or federal law.

## IV. Conclusion

Accordingly, the Motion is due to be granted, and Plaintiff's case is due to be dismissed. The court will enter a separate order.

**DONE** and **ORDERED** this the 26th day of April, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge